[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendants, Lamoureaux Ford Leasing Corporation, Kris-Marc G., C. Thomas Campagna, Louis Gallinaro and Lionel Lamoureaux have moved to dismiss the complaint as to them for lack of in personam jurisdiction. Lamoureaux Ford Leasing Corporation and Kris-Marc Company are foreign corporations unlicensed in Connecticut, and the three individuals defendants reside outside of Connecticut.
The plaintiff, a Connecticut corporation, has filed objections to these motions to dismiss except for the one filed on behalf of Lionel Lamoureaux. The court has allowed the plaintiff to file an amended complaint. All parties to these motions have submitted affidavits supporting their respective claims. The plaintiff submitted the affidavit of Martin Legault.
The plaintiff alleges that it is engaged in the business of constructing and leasing group homes situated in Connecticut. It avers that it is part of a network of private corporations which provide such non-institutional housing for mentally retarded citizens of the state; that defendants Charter Oak Associates (COA), also a Connecticut CT Page 3243 corporation based in Hebron, was engaged in the business of managing group homes for the state; that the plaintiff leased several group homes to COA from 1987 to 1991; that the plaintiff leased personal property to COA during this period; that the plaintiff lent sums of money to COA by way of promissory notes in conjunction with the operation of these homes; and that, as of June 1991, COA was in default of the notes and the leases.
The plaintiff further alleges that the cause of these defaults was the disallowance of funds from the Department of Mental Retardation which was to be available to COA to pay the plaintiff and that the disallowance of funds to COA resulted from improper payments by COA to some of the other defendants made in contravention of the state regulations which govern such transactions.
Because the plaintiff has filed no objection to Lionel Lamoureaux's motion to dismiss and because the sheriff's return fails to disclose any service of the summons and complaint upon him in any manner, his motion to dismiss is granted without further discussion.
As to the remaining movants, the first inquiry of the court concerns whether our long-arm statutes authorize the exercise of jurisdiction under the particular facts pertaining to each defendant, Lombard Bros. Inc. v. General Asset Management Co, 190 Conn. 245 (1983), p. 250. Should the court determine that the long-arm statutes apply, then the court must analyze the minimum contacts present to decide whether due process would be offended by an exercise of jurisdiction over the particular defendant, Ibid. the plaintiff has the burden of proving the facts necessary to justify jurisdiction, Ibid.; and Standard Tallow Corporation v. Jowdy, 190 Conn. 48 (1983), p. 53.
There is no presumption of the truth of the plaintiff's allegations in this regard, Standard Tallow Corporation v. Jowdy, supra. Unless material facts are undisputed, mere allegations and even supporting affidavits are insufficient to prove the requisite facts, Ibid., p. 56. The plaintiff is obligated to produce evidence at the hearing of any contested fact it wishes the court to consider in arriving at the court's determination of this issue, Ibid.
A hearing on these motions and objections was held on April 6, 1992. The plaintiff called no witnesses and offered no evidence, but, instead, chose to rely on its allegation in the amended complaint and the Legault affidavit. The movants likewise proffered no additional evidence and chose to rely CT Page 3244 on the affidavits they submitted. It has been held that where a party agrees to join in "the battle of affidavits" that party effectively consented to be bound by the resulting decision, Rosenblit v. Danaher, 206 Conn. 128 (1988), p. 136. Although the parties have not explicitly agreed that the court would resolve the issues based on the affidavits submitted, their actions in submitting the case and arguing the issues in this fashion amount to the same "battle of affidavits". Consequently, the court will look to the affidavits to resolve the various factual disputes which arise in order to determine if personal jurisdiction ought to obtain.
 I
With regard to the corporate defendants, the applicable long-arm statute is Conn. Gen. Stat. Sec. 33-411 (c). It is undisputed that the plaintiff has its usual place of business in Connecticut, nor is it disputed that these movants are foreign corporations unlicensed in this state. Section 33-411 (c) has four subsections which describe the four situations in which personal jurisdiction may be had over unlicensed, foreign corporations. The plaintiff claims that Sec. 33-411 (c)(1), (3), and (4) apply to these defendants.
From the affidavits the court concludes that Lamoureaux Ford Leasing Corp. leased five motor vehicles and some office equipment to COA and that Kris-Marc Co. leased one motor vehicle to COA. The site of these agreements was in Massachusetts. The place of delivery of the leased items is unproven, but the leased items eventually were used in Connecticut.
Subsection (1) of Sec. 33-411 (c) indicates that a foreign corporation shall be subject to suit in Connecticut on any cause of action arising out of "any contract made in this state or to be performed in this state." In order to establish personal jurisdiction under this subsection, the plaintiff must make a prima facie, evidentiary showing that (1) the foreign corporation made a contract in Connecticut or one to be performed in Connecticut and (2) the plaintiff's cause of action arises out of that contract. It should be noted that the plaintiff makes no claim that any contract 1 existed between itself and these foreign corporations. It does claim that it had a contract with COA which in turn had contracts with these movants.
While the affidavits may provide sufficient information for the court to find that these movants had an agreement with COA which was to be performed in Connecticut, there is CT Page 3245 no evidence contained in the affidavits which justifies a conclusion that the plaintiff's alleged causes of action arise from the contracts between COA and the movants. Legault's affidavit recites no personal knowledge of any of the untoward acts alleged in the amended complaint. His affidavit merely relates second hand knowledge of the lease agreements. There is no evidence connecting these lease agreements to the allegations of conspiracy, conversion, larceny, etc. Because the plaintiff has not met its burden of proving that its alleged causes of action arose out of these lease agreements Sec. 33-411 (c)(1) is inapplicable.
Subsection (2) of Sec. 33-411 (c) indicates that a foreign corporation is subject to suit in Connecticut if any cause of action arises out of the "distribution of goods by such corporation with the reasonable expectation that such goods are to be used. . . .in this state and are so used. . . ." Assuming, arguendo, that the lease agreements described above amount to the distribution of goods to be used in Connecticut, the same failure of the affidavits, as opposed to allegations in the complaint, to link any claimed cause of action to the "distributions" to COA exists. The plaintiff has failed to demonstrate that its causes of action arise from these distributions to which it is a stranger. Therefore, Sec. 33-411 (c)(3) is also inapplicable.
Subsection (4) of Sec. 33-411 (c) confers personal jurisdiction over foreign corporations as to any cause of action arising out of "tortious conduct in this state." The affidavits are devoid of any evidence supporting a claim that these foreign corporations committed any tortious acts, and, thus, this subsection is also inapplicable.
Therefore, the plaintiff has not proved that the Connecticut long-arm statute governing unlicensed, foreign corporations applies to these movants.
 II
Turning next to defendant Louis Gallinaro, the affidavit of Legault notes that Gallinaro was an officer of Executive Management Associates, another defendant in the case, and received substantial income from that company. Our long-arm statute governing non-residents is Conn. Gen. Stat. Sec.52-59b. This statute describes four situations which may give rise to personal jurisdiction in Connecticut over non-residents. Only the first three purportedly apply to this movant. Personal jurisdiction may be exercised by the court where the non-resident (1) transacts any business within Connecticut; (2) commits tortious acts within CT Page 3246 Connecticut; or (3) commits tortious acts outside Connecticut injuring persons or property in Connecticut and certain other conditions exist.
The most that can be gleaned from the affidavits is that Gallinaro was a paid officer of Executive Managements Associates. No other evidence is contained in the affidavits with regard to him which supports the position that he falls within any of the three situations necessary for the court to exercise personal jurisdiction over him. Therefore, Sec.52-596 does not confer such jurisdiction.
 III
With respect to defendant, C. Thomas Campagna, this movant is also a non-resident and personal jurisdiction over him must be acquired under Sec. 52-59b. The three applicable criteria under that statute is the same as those listed above for Gallinaro. From the affidavits submitted the court finds that C. Thomas Campagna was a paid officer of Executive Management Associates and visited the principal office of COA in Connecticut on occasion as part of his duties as an officer of that company. There is no evidentiary showing by way of these affidavits that this movant committed any tortious act within or outside Connecticut.
The only remaining claim is that under Sec. 52-59b(a)(1) requiring proof that a non-resident transacted business in Connecticut. The court construes this section to require proof that the non-resident transacted business in Connecticut in an individual capacity and not merely on behalf of a corporate employer. An exception to this construction would apply if the proven facts demonstrate that the corporate veil ought to be pierced to reach this individual.
Generally, the ignoring of the corporate entity will not be justified for jurisdictional purpose, McPheron v. Penn Central Transportation Co., 390 F. Sup. 943 (D.Conn. 1975), p. 953. A clear distinction must be drawn between jurisdictional and liability concepts when addressing the propriety of piercing the corporate veil, Ibid. Traditional liability considerations on this issue, such as the "Instrumentality Rule," are inapposite for the purpose of determining when the piercing of the corporate veil is necessary to obtain personal jurisdiction under a long-arm statute, Ibid., p. 953 and 956.
With regard to this jurisdictional issue, it has been held that only the day-to-day control of a subsidiary by a CT Page 3247 parent corporation will suffice to pierce the corporate veil, Pratt General Contractors, Inc. v. Union Indemnity Insurance Company of New York, Inc., 12 C.L.T. No. 24, p. 30 (June 23 to 29, 1986). The information in the plaintiff's affidavit falls far short of demonstrating a prima facie case that this non-resident was the alter ego of either Executive Management Associates or COA. The bare assertion that this movant attended COA meetings to direct group home activities does not prove that he was acting in an individual capacity rather than representative capacity. Therefore, Sec. 52-59b is inapplicable to obtain personal jurisdiction over C. Thomas Campagna.
For the above reasons, the motions to dismiss are granted as to all movants.
BY THE COURTS,
HON. SAMUEL SFERRAZZA SUPERIOR COURT JUDGE